E. P. ADAMS *v.* WILLIAM JANES.

May Term, 1909.

Present:   ROWELL, C. J., MUNSON, WATSON, and HASELTON, JJ.

Opinion filed March 28, 1910.

*Statute of Frauds—Memorandum—Sufficiency—Parol Evidence*
*—Application of Writing to Facts—Sales—Contract—Con-*
*struction—"F. O. B"—Pleading—Variance—Reception of*
*Evidence—Exception—Necessity of Offer.*

The "memorandum of the bargain" required by the Statute of Frauds
to evidence the sale of goods must give such a description of the
contract as will obviate the necessity of resorting to parol evidence
to supply any essential term of the contract.

In an action for breach of a contract for the sale of hay, evidenced
by a writing that recites, "Sold my hay to" plaintiff "for $10.50
per ton, f. o. b.," evidence of the location of the hay with reference
to the railroad stations was properly received, as showing the
application of the letters "f. o. b." to the subject-matter.

Where the memorandum of a contract for the sale of hay stated,
"Sold my hay to Adams for $10.50 per ton f. o. b.," the letters
"f. o. b.," without designation of place, meant delivery on board the
cars at the usual place of shipping such freight from that locality.

In an action for breach of a contract for the sale of hay that the
declaration alleged was to be pressed, and the memorandum evi-
dencing the contract said nothing about pressing, but only stated
that it was sold "f. o. b.", there was no variance between the con-
tract declared on and the one in evidence, since it is necessarily
implied that, as the hay was to be delivered on board the cars
for transportation, it would be bailed, as otherwise such transporta-
tion would be impracticable.

In an action for the breach of a contract for the sale of hay, the bill of
exceptions stated that an issue was whether the signature to the
memorandum of the contract was genuine, and that defendant
denied its genuineness and, in support of his contention, offered
a witness who was acquainted with defendant's handwriting; that
this witness was shown the memorandum, and was asked whether

in his opinion the signature was in the handwriting of defendant; that plaintiff's counsel objected, and that, no offer being made, and it not further appearing what the answer would be, the court excluded the testimony against defendant's exception. *Held*, that it was not necessary, in the circumstances, to state what answer was expected in order to render the exception available, and that the exclusion of the evidence was error.

SPECIAL ASSUMPSIT, Plea, the general issue, Trial by jury at the September Term, 1908, Franklin County, *Powers, J.*, presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. The defendant also brought to the Supreme Court for Franklin County at its May Term, 1909, his petition for a new trial, for that the presiding judge below refused to sign and allow such a bill of exceptions as defendant alleges he is entitled to. This petition was heard with the exceptions.

*C. G. Austin & Sons* for the defendant.

The variance relied upon was material and substantial and affected the very right of the matter, because if the allegations in the pleadings were true, an additional burden, not incorporated in the memorandum, was thereby imposed upon the defendant to press and deliver said hay on board the cars at Swanton or elsewhere, and would tend to increase the damages recoverable in the case. *Dano* v. *Sessions*, 65 Vt. 79; *Holdridge* v. *Holdridge Est.*, 53 Vt. 546; *Morey* v. *King*, 49 Vt. 311.

*Furman & Webster* for the plaintiff.

The memorandum was sufficient in law to satisfy the Statute of Frauds and was properly admitted. The Statute does not require a formal contract, drawn up with technical precision; it only requires the substance of the contract and not a detail of all the particulars. 1 Chitty on Contracts, 95-6; *Harvey* v. *Stevens*, 43 Vt. 653, 29 Am. & Eng. Enc. 851.

The initial letters, "F. O. B." in contracts of sale, when the property is to be transported, means, "Free on board the cars at a designated place." 13 Am. & Eng. Enc. 726; *Silberman* v.

*Clark,* 96 N. Y. 522; *Capehart* v. *Furman Farm Implement Co.,* 103 Ala. 671; and where the place is not designated, the usual shipping point for the locality will be implied. Parol evidence is always admissible to show the location of the subject-matter of the ˙contract. *Patch et ux.* v. *Keeler et al.* 27 Vt. 255; *Patch et al.* v. *Keeler et al.* 28 Vt. 332; 1 Greenleaf on Evidence, §286.

MUNSON, J. The declaration contains three counts. The first alleges that defendant sold the plaintiff 90 tons of hay at $10.50 a ton, to be pressed and delivered by the defendant in the cars at Swanton within a reasonable time, and to be paid for on delivery. The second count sets up a sale made in writing, says nothing about the hay being pressed, and alleges that the defendant was to deliver it "on board the cars when thereunto requested, to wit, at Swanton aforesaid," and that it was to be paid for on delivery. The third count is like the first, except that it alleges that part of the hay was to be delivered at Swanton, part at Swanton Junction in the town of Swanton, and part at Oakland in the town of Georgia.

The plaintiff offered in evidence a writing dated Oct. 8, 1906, apparently signed by the defendant, and reading as follows: "Sold my hay to E. P. Adams for $10.50 per ton, F. O. B., all to be bright sweet herds grass, about 90 tons." The defendant objected to its admission because it did not contain the essential elements of a contract, and because it did not contain the essential elements of the contract set out in the declaration. The writing was admitted, and the case states that it was the only writing made in connection with the sale.

The first point is whether the writing satisfies the Statute of Frauds. The statute requires that "some note or memorandum of the bargain" be made in writing. This writing must contain such a description of the contract as will obviate the necessity of resorting to parol evidence to supply any term of the contract essential to its validity. *Ide* v. *Stanton,* 15 Vt. 685, 40 Am. Dec. 698; *Buck* v. *Pickwell,* 27 Vt. 157, 167. The defendant's brief states this rule, and argues in general terms that the memorandum in question does not contain all the essential elements of a valid contract, but does not specify any particular in which it is claimed to fall short of the requirement. The

only feature of the writing mentioned is that regarding the delivery, and all that is said of this is that the abbreviation "F. O. B." is a familiar and common term used in business and understood by everybody to mean "free on board." The only objection suggested by this will be covered by our consideration of an exception to the evidence.

Evidence of the location of the hay with reference to the railroad stations in the vicinity was properly received. Defendant argues in support of his exception that the terms of the agreement were not subject to explanation. It is true that the court received the evidence as explanatory of the meaning of F. O. B., but this was evidently an inaccurate statement of what the court had in mind. The testimony introduced was not evidence explaining the meaning of the letters, but evidence showing their application to the subject-matter. We take it that F. O. B., without designation of place, means delivered on board at the usual place of shipping such freight from that locality. So extrinsic evidence to show the place was adding nothing to the terms of the writing.

The defendant insists that there was a material variance between the contract alleged in the declaration and the contract evidenced by the memorandum, in that the latter contained no stipulation that the hay was to be pressed. It is true that the memorandum contains no such stipulation, but we think it is necessarily implied from its terms. If to be delivered on board the vehicles of a common carrier, as the term F. O. B plainly indicates, it could not be delivered in any other form, for its loading and transportation without pressing is impracticable, and the party required to load it is necessarily required to press it. The language is to be construed with reference to the settled and known requirements of the freighting business.

The exceptions state that it was an issue on the trial whether the signature to the memorandum was genuine, and that the defendant denied its genuineness on the stand, and offered one Burton as a witness in support of his contention. By a continuation of the same sentence the defendant is spoken of as offering Burton "as a person familiar with the defendant's handwriting, who had known and done business with the defendant quite extensively for 16 or 17 years; that he had seen him write a great deal; was acquainted with his handwriting

and had seen it every week during said time." It is not to be supposed that defendant's counsel stated all this in offering the witness, and it is sufficiently apparent that it is a recital of the testimony obtained from the witness preparatory to his being inquired of regarding the signature. The exceptions then state that the witness was shown the memorandum and was asked whether in his opinion the words "Wm. Janes" were in the handwriting of the defendant; that plaintiff's counsel objected to the question, and that, "no offer being made and it not appearing what the answer would be," the court excluded the testimony.

It clearly appears from the above statement that the defendant denied the signature, that the issue was whether he signed it or not, and that the testimony was being offered to support the defendant's contention. It appeared from this that the question was asked for the purpose, and in the expectation, of securing an opinion that it was not the defendant's signature; and this appeared as plainly as if counsel had said, "we offer to show, and expect the answer will be, that it is not his signature." The later statement that no offer was made, and that it did not appear what the answer would be, must be construed in connection with what is before stated, and when so considered it is seen to mean that no offer or statement was made other than such as may have appeared from the course and nature of the examination. So the question is simply whether it was necessary in such a situation to state in terms what answer was expected in order to render the exception available. To require this would carry the rule quite beyond the reason of it. The statement sometimes broadly made that it is not error to exclude a question not accompanied by an offer must be considered in connection with the circumstances in which the offer was made. The defendant was entitled to have the testimony received on what had appeared up to that point, and its exclusion was error.

*Judgment reversed and cause remanded.*

Watson, J., concurs in the result.

The petition for a new trial is not sustained, and is *dismissed with costs.*