**CENTRAL FREIGHT LINES, INC.,**
Appellant,

v.

**CLARKE & COURTS, INC., Appellee.**

No. 7778.

Court of Civil Appeals of Texas.

Texarkana.

Feb. 21, 1967.

Rehearing Denied March 14, 1967.

R. Douglas Coffin, Muse, Currie & Kohen, Dallas, for appellant.

Preston Shirley, Mills, Shirley & Mc-Micken, Galveston, Raybourne Thompson, Jr., Vinson, Elkins, Weems & Searls, Houston, for appellee.

CHADICK, Chief Justice.

Clarke & Courts, Inc., a retailer of office equipment and supplies, placed an order with Vickery & Company, Inc., a carpet jobber, for two custom made Barwick brand carpets of a certain color and of specific but unusual dimensions. This order was placed with Vickery & Company to secure custom made carpet for two separate floor areas in the Hutchings-Sealy National Bank of Galveston, a Clarke & Courts customer. Vickery in turn placed an order for the carpeting with E. T. Barwick Mills, Inc., Chamblee, Georgia, and that firm arranged with Lewis F. Pursley, doing business as Crest Carpet Company, to mill the carpets. The carpeting in two separate rolls was shipped to Clarke & Courts from Pursley's mill at Douglasville, Georgia. The bill of lading on the shipment dated July 26, 1963, shows Barnes Freight Lines, Inc., as originating carrier, E. T. Barwick Mills, Inc., shipper, and Clarke & Courts, Inc., consignee, with freight charges collect.

The shipment arrived at the Texas City, Texas, "Y", and an employee of Central Freight Lines, Inc., the delivering carrier, telephoned Clarke & Courts and stated that

the two parcels had arrived at the Y, but one was damaged, and suggested an examination be made to avoid the expense of delivery to Clarke & Courts' business house in Galveston if the shipment was not acceptable in its damaged condition. After an examination of the damaged carpet by an expert, the receipt of the expert's report and receipt of advice from Vickery & Company, Clarke & Courts' manager became convinced that the damaged parcel of carpet could not be repaired so as to give satisfactory service, and that the undamaged parcel of carpeting could not be satisfactorily matched in color with a replacement for the damaged carpet. The manager refused to receive both parcels and placed a new order, duplicating the original, for both pieces of carpeting. The two sections of carpeting in the duplicated order were manufactured and on delivery to Clarke & Courts were accepted, paid for, and are not referred to hereafter.

Following trial before the court, without the intervention of a jury, on the pleadings and proof in the actions as instituted by the parties, judgment was entered that Vickery & Company Inc., recover $2,309.23 and an attorney fee of $1,000.00, with interest, costs, etc., from Clarke & Courts, Inc.; that Clarke & Courts, Inc., recover from Central Freight Lines, Inc., $1,632.92, with interest, costs, etc.; and title to the two original parcels of carpeting was adjudged to be in Clarke & Courts, Inc. On request the trial judge filed findings of fact and conclusions of law. Clarke & Courts appealed from the judgment entered, and Central Freight Lines appealed only from the portions of the judgment adverse to it.

■ The trial judge concluded that the carpeting was delivered in good condition to a common carrier at Douglasville, Georgia, and that (so far as the action between Vickery & Company and Clarke & Courts is concerned) title thereto vested at that time in Clarke & Courts, and such company, as owner, assumed the risk of damage to the shipment after delivery to

the carrier. Passage of title to goods under such circumstances depends upon the intention of the parties to the sale contract. John E. Morrison & Co. v. Murff, 212 S.W. 212 (Tex.Civ.App.1919, no writ); Ed Maher, Inc. v. Morris, 67 S.W.2d 340 (Tex.Civ.App.1934, no writ); F. L. Shaw Co. v. Coleman, 236 S.W. 178 (Tex.Civ.App.1922, writ ref'd). A general rule applicable in the construction of sales contracts is that in the absence of an agreement by the parties that title passes from seller to buyer at a different time, delivery to a carrier by the seller of goods constitutes delivery to the buyer, and title to the goods passes to the buyer at the time of delivery. L. Grief & Bro. v. Seligman, 82 S.W. 533 (Tex.Civ.App.1904, no writ); Alexander v. Heidenheimer, 221 S.W. 942 (Tex.Com.App.1920, Op. adpt by Sup.Ct.); Nashville, C. & St. L. Ry. Co. v. Grayson County Nat. Bank, 100 Tex. 17, 93 S.W. 431 (1906); Luse v. Crispin Company, 344 S.W.2d 926 (Tex.Civ.App.1961, wr. ref'd n. r. e.); Silvers Box Corporation v. J. E. Stone & Co., 248 S.W. 1104 (Tex.Civ.App. 1923, no writ).

■ Clarke & Courts does not question these general rules just noted, but claims the facts in evidence bring this case within an exception to the last stated rule. The brief points out that Clarke & Courts' order for carpeting placed with Vickery & Company was for chattels not then in existence, and that such chattels were to be thereafter manufactured according to specifications contained in the order. Gammage v. Alexander, 14 Tex. 414 (1855) and Pope v. Allis, 115 U.S. 363, 6 S.Ct. 69, 29 L.Ed. 393 are cited for the proposition that when a vendor sells goods of a specified kind and quality to be manufactured at a later date and agrees to ship the goods to the buyer when manufactured the vendee is not bound to accept the goods without examination and until they are accepted by the vendee as being in conformity with the purchase agreement the vendee acquires no title or property in them. It is not necessary under the record to determine the

legal soundness of Clarke & Courts' proposition, but if its soundness is conceded the facts here do not give relief. The company's Galveston store manager testified positively that the shipment was rejected because it was damaged, and for no other reason. There is no evidence or implication that the carpeting was rejected because it failed to conform to dimensions, color, quantity or quality the contract specified. The evidence before the trial court supported finding that the title to the carpeting passed to Clarke & Courts when delivered to the carrier at Douglasville, Georgia. Under other points the appellant argues that the contract was violated and Clarke & Courts discharged from its obligation when the E. T. Barwick Mills, Inc., subcontracted manufacture of the carpeting to Lewis F. Pursley. Under the facts of the record the contention can not be sustained. Pursley was the alter ego of E. T. Barwick Mills, Inc. It is elementary that one who acts through another acts for himself. Wright v. Calhoun, 19 Tex. 412; Industrial Acceptance Corporation v. Corey, 19 S.W. 2d 365 (Tex.Civ.App.1929, affirmed Tex. Com.App., 29 S.W.2d 978, 1930); 2 Tex. Jur. Agency § 2, and 3 Am.Jur. Agency § 2. There was no provision in the contract between Clarke & Courts and Vickery & Company that prohibited E. T. Barwick Mills, Inc., from subcontracting the manufacture of the carpet. The carpeting delivered carried Barwick's brand, quality, reputation as a national manufacturer, and prestige in the market place, largely intangible attributes that Clarke & Courts sought to obtain by purchasing Barwick carpeting from Vickery & Company.

■ The trial judge concluded that Clarke & Courts was entitled to recover from Central Freight Lines, Inc., only for the depreciation in value of the damaged pieces of carpet, and rendered judgment accordingly. Central Freight Lines asserts that even though the court found the carrier would not be liable for special damages, that the damages proven, except for slight general damages amounting to less than $15.00, are special in nature and the court erred in the amount of the money award made. Clarke & Courts did not plead an action for special damages. A close question is presented by the record. Special damages as the term is understood in the Texas practice are "injurious consequences that are not deemed as a matter of law to have been foreseen". See 17 Tex.Jur. Damages § 10, and cases listed in footnotes 1 and 2.

■ A common carrier receiving rolls of carpeting for shipment can foresee that damage to the rolls will reduce its usefulness and value whether the pieces be large, small, custom made for special use, or made for sale at retail. It is also obvious that the point of injury to the carpet in all cases has a considerable influence upon depreciation in value. If injury is at a point where the injured portion may be trimmed out and leave a useful remainder, or injury repaired, depreciation in value would necessarily be less than where the destroyed portion was not so fortunately located. A carrier could reasonably foresee the effect of injury to a parcel of carpeting changes with the nature and location of the damage. The evidence of the place and scope of the injury and its impact on value varied with the witness offering testimony. When recognition is given to the discretion a trial judge exercises in the resolution of the facts in a case such as this, this court is unable to say that the judge erred in concluding the damage was general in nature or in the amount of damages awarded Clarke & Courts. There was probative evidence supporting his conclusions.

The parties carefully briefed numerous points of error, Clarke & Courts 22 and Central Freight Lines 8, some raised questions the parties may regard as of more importance or merit than those discussed, all have been considered and the decision reached that reversible error is not shown; each point is overruled. The judgment of the trial court is affirmed.